IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MISTY D. STEWART
o/b/o J.L.M, a minor                                                                          PLAINTIFF

        v.            Civil No. 2:11-cv-02203-JRM

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

**I.     Factual and Procedural Background**

Plaintiff, Misty D. Stewart, brings this action on behalf of her son, J.L.M., seeking judicial review, pursuant to 42 U.S.C. § 405(g), of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his application for child supplemental security income ("SSI") benefits under Title XVI of the Social Security Act (the "Act").

Plaintiff protectively filed an application for SSI on March 22, 2007, alleging a disability onset date of March 1, 2007, due to learning disorder, attention-deficit/hyperactivity disorder ("ADHD"), anxiety, and speech and language delay. Tr. 10, 13, 238. At the time of filing, Plaintiff was a preschooler, and subsequently became a school-age child. Tr. 13. Plaintiff's application was denied at the initial and reconsideration levels. Tr. 126-128, 130-133. An administrative hearing was held on November 6, 2008. Tr. 41-77. Plaintiff was present at the hearing and represented by council. The ALJ issued an unfavorable decision on June 23, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 107-122.

In a remand order dated March 24, 2010, the Appeals Council directed the ALJ to obtain additional evidence concerning Plaintiff's anxiety, further evaluate the treating source opinion, take any further action needed to complete the administrative record, and issue a new decision. Tr. 123-

125. A supplemental hearing was held on November 2, 2010. Tr. 78-104. In a written decision dated February 3, 2011, the ALJ determined Plaintiff was not disabled within the meaning of the Act. Tr. 7-24. On September 29, 2011, the Appeals Council declined to review the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-6. Plaintiff now seeks judicial review of that decision.

## II.     Applicable Law

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be disabled under the Act, a child must prove that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. In determining whether a claimant under the age of eighteen is disabled, the ALJ undertakes a sequential three-step evaluation. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718

2

(8th Cir. 2005); 20 C.F.R. § 416.924(a).  The ALJ first determines whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  If the child is so engaged, he will not be awarded SSI benefits.  *Id.*  At the second step, the ALJ determines whether the child has an impairment or combination of impairments that is "severe."  20 C.F.R. § 416.924(c).  To be deemed severe, an impairment must be more than "a slight abnormality . . . that causes no more than minimal functional limitations."  *Id.*  At the final step, the ALJ determines whether the child has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment.  20 C.F.R. § 416.924(d).

### III.   ALJ's Determination

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since March 22, 2007, the application date.  Tr. 13.  At step two, he found Plaintiff suffers from learning disorder and speech and language delay, which were considered severe impairments under the Act.  At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Tr. 13.  Additionally, the ALJ determined Plaintiff did not have an impairment or combination of impairments that functionally equaled a listing, as Plaintiff had no limitation or less than marked limitation in each of the six domains of functioning.  Tr. 13-24.  Accordingly, the ALJ determined Plaintiff was not disabled from March 22, 2007, the application date, through February 3, 2011, the date of the administrative decision.  Tr. 24.

### IV.   Discussion

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence.  Specifically, Plaintiff raises the following issues: (A) whether the ALJ erred in his functional

equivalence analysis; and (B) whether the ALJ erred in evaluating the opinion evidence. *See* Pl.'s Br. 7-13. The Commissioner contends that substantial evidence supports the ALJ's decision. *See* Def.'s Br. 10-17.

The records show that on January 26, 2007, Nanette Barnett, a speech-language pathologist, conducted a Psychoeducational Evaluation of Plaintiff. Tr. 294-310. On the Wechsler Intelligence Scale for Children IV, Plaintiff received a verbal comprehension score of 69 and a full-scale score of 73. Tr. 294, 298. Plaintiff's verbal comprehension score was extremely low and his full-scale score was borderline. Tr. 298. Ms. Barnett determined Plaintiff had a specific learning disability involving basic reading and mathematical calculation. Tr. 301-302. She noted that Plaintiff had adequate behaviors during the evaluation, normal vision and hearing, and adequate oral structures for communication. Tr. 309. Plaintiff's receptive and expressive language scores fell below the average range and he exhibited a moderate articulation disorder characterized by substitution and omission of sounds. Tr. 309. However, his voice and fluency appeared adequate. Tr. 309. Ms. Barnett recommended that Plaintiff undergo sixty minutes of speech-language therapy weekly. Tr. 309. The Arkansas Severity Rating Assignment for Speech/Language Impairment rated Plaintiff's limitations as moderate for articulation, moderate for language, normal for fluency, and normal for voice. Tr. 310-311.

Plaintiff was also evaluated by Sandra J. Sanders, a school psychology specialist. Tr. 394-403. Test results indicated a specific learning disability in the areas of basic reading and math calculation. Tr. 401-402. Ms. Sanders recommended that Plaintiff participate in small group and individualized instruction in the areas of basic reading and math calculation. Tr. 403.

On May 4, 2007, Becky Evans, Plaintiff's first grade teacher, completed a Teacher Questionnaire, in which she stated Plaintiff was able to function well in most areas, although he had a very serious problem with expressing ideas in written form and needed extra support in written communication. Tr. 266-273. She found that Plaintiff's speech, written communication, and handwriting were all serious problems, and noted that Plaintiff received resource support for his speech. Tr. 273. However, Ms. Evans opined that Plaintiff was a normal functioning child who held his own in reading, with a "B" average, and had good comprehension. Tr. 273. She added that he was responsible, polite, and obedient, and did not require behavior modification strategies. Tr. 269, 273.

On May 29, 2007, Holly Layes, a speech-language pathologist, found that Plaintiff's speech was 50 percent intelligible on the first attempt and 70-75 percent intelligible with repetition. Tr. 284. Ms. Layes noted that Plaintiff's misarticulations consisted of substitutions and a few omissions. Tr. 284. On that same date, Stephen A. Whaley, M.D., a state agency physician, completed a Childhood Disability Evaluation Form in which he opined that Plaintiff had less than marked limitations in the domains of acquiring and using information and interacting and relating with others, and no limitations in the domains of attending and completing tasks, moving about and manipulating objects, caring for yourself, and health and physical well-being. Tr. 421-426.

On September 11, 2007, Jennifer Jernigan, Plaintiff's second grade teacher, completed a Teacher-Educator Domain Performance Assessment, in which she found Plaintiff had extreme limitations in the domains of maintaining attention and concentration for extended periods. Tr. 245. Ms. Jernigan also determined Plaintiff had marked limitations in the domains of acquiring and using

5

information, attending and completing tasks, interacting and relating with others, and moving about and manipulating objects. Tr. 244-248.

Area Health Educational Center ("AHEC") clinic notes from August 6, 2007, through October 3, 2007, reveal that Plaintiff's mother reported that Plaintiff had been hyperactive for years but was unable to give any specific examples. Tr. 451. She stated that Plaintiff made "Bs" and "Cs" in school and would sit down and do his homework if she could get him to calm down. Tr. 451. Audra Jackson, M.D., noted that Plaintiff was jumping around the room, interrupting her conversation with Plaintiff's mother, and fighting with his brother. Tr. 451. She noted that Plaintiff did not answer questions directed at him. Tr. 451. On October 3, 2007, Dr. Jackson noted that completed teacher/school forms showed no sign of ADHD and forms Plaintiff's mother completed showed mild hyperactivity but no inattention. Tr. 450.

On November 7, 2007, Plaintiff presented to Perspectives Behavioral Health Management for a diagnostic evaluation. Tr. 472-489. Plaintiff's mother reported problems with behavior and hyperactivity, but noted that Plaintiff received "As," "Bs," and "Cs" in school. Tr. 472-473. Plaintiff's therapist noted that Plaintiff's speech was difficult to understand and he sucked on his fingers between appointments. Tr. 472-473. Plaintiff was diagnosed with anxiety disorder not otherwise specified and given a Global Assessment of Functioning ("GAF") score of 48. Tr. 470, 488. Brent Witherington, M.D., prescribed Sertraline and Focalin. Tr. 456, 470.

On June 12, 2008, Plaintiff's mother reported that Plaintiff was doing "a lot better." Tr. 455. Treatment notes indicate some noncompliance with therapy sessions. Tr. 458. On July 31, 2008, Dr. Witherington examined Plaintiff and noted that Plaintiff's condition was improving, although he had visited a therapist only once during the current review period. Tr. 458. On August 12, 2008,

6

Dr. Witherington completed a Psychiatric Documentation Form for Children, in which he determined Plaintiff met the Listing for anxiety-related disorder. Tr. 443-449. Dr. Witherington noted that Plaintiff had marked impairment in age appropriate/cognitive communicative function, social functioning, and personal/behavior function, as well as deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner. Tr. 449.

On September 9, 2008, Plaintiff's mother reported that Plaintiff was doing worse and had been getting in trouble at school and on the bus. Tr. 453. However, Plaintiff's mother denied receiving any feedback from Plaintiff's teachers or school. Tr. 453. Dr. Witherington noted that Plaintiff's condition was "stable" and estimated his GAF score at 50. Tr. 453.

On February 21, 2008, an Individualized Education Program ("IEP") assessment stated that Plaintiff's language skills were below grade level, his word reading, numerical operations, and speaking scores were at expectancy level, and his reading comprehension, mathematical reasoning, spelling, listening, and learning process scores were above expectancy level. Tr. 317. The examiners noted that Plaintiff did not need behavioral interventions, accommodations, special communication, or assistive technology. Tr. 318. Plaintiff followed discipline and attendance policies, and a progress goal report found that Plaintiff's goals either had been met or would be met by the end of the year. Tr. 318-319. A third grade report card shows that Plaintiff received grades of "A," "B," "C," outstanding, and satisfactory. Tr. 330.

On September 14, 2009, Plaintiff visited University of Arkansas for Medical Science ("UAMS") Centers for Children due to concerns of a pervasive development disorder. Tr. 586. On the Wechsler Intelligence Scale for Children IV, Plaintiff received a verbal comprehension score of 79 and a full-scale IQ score of 83, indicating functioning within the low average to borderline range.

7

Tr. 589. Examiners noted that Plaintiff did not meet the diagnostic criteria for a diagnosis of pervasive developmental disorder, but did demonstrate delays in socialization skills. Tr. 593. Plaintiff was diagnosed with anxiety disorder not otherwise specified, ADHD, inattentive type, mixed expressive-receptive language disorder, phonological disorder, and obsessive-compulsive symptoms. Tr. 592.

On September 21, 2009, Plaintiff underwent a Psychoeducational Reevaluation. Tr. 342. Examiners noted that Plaintiff spoke in a quiet tone with adequate articulation and maintained good eye contact, and his visual and auditory acuity appeared to be adequate for testing purposes. Tr. 342. Plaintiff's fine motor skills were within normal limits, he had a legible handwriting, and he used his fingers for counting or calculating mathematical problems. Tr. 342. Ms. Sanders opined that test results did not indicate a disability. Tr. 345.

Plaintiff underwent a Speech and Language Reevaluation on September 28, 2009. Tr. 346-354. During the evaluation, Plaintiff was fretful, needed frequent repetition of information, and exhibited impulsive, fidgety behavior. Tr. 347. He often had to be reminded to take his shirt collar or fingers out of his mouth. Tr. 347. Plaintiff's articulation scores were within the normal range, but his receptive language scores fell below the average range and his expressive language scores fell significantly below the average range. Tr. 354. Ms. Layes recommended sixty minutes of speech-language therapy weekly. Tr. 354.

On March 17, 2010, Dr. Witherington saw Plaintiff for evaluation of ADHD and anxiety disorder. Tr. 491. He noted Plaintiff's history of noncompliance with multiple medications and therapy treatment, with subsequent discharge in December 2009. Tr. 491. He noted that Plaintiff's mother felt that the combination of Sertraline and Strattera had been effective. Tr. 491. Plaintiff's

mother reported that Plaintiff's grades were dropping and he had been to detention on two occasions for "acting out." Tr. 491. However, she also stated that Plaintiff had been out of medication for several months. Tr. 491. Dr. Witherington diagnosed Plaintiff with ADHD, predominantly inattentive, anxiety disorder not otherwise specified, phonological disorder, mixed expressive/receptive language disorder, and noncompliance with treatment. Tr. 497. He estimated Plaintiff's GAF score at 45. Tr. 497. He prescribed Strattera and recommended individual and family therapy. Tr. 498. Dr. Witherington noted that the public school system would continue to treat Plaintiff's learning disorders. Tr. 502.

In April 2010, Plaintiff's mother reported that Plaintiff was doing "better" and his grades had improved. Tr. 536. In June 2010, however, Plaintiff's mother reported that he was doing worse overall and had been playing with lighters and acting out. Tr. 534. Dr. Witherington prescribed Tenex for impulsivity. Tr. 535. On August 23, 2010, Dr. Witherington noted that Plaintiff was doing better overall with his medication, "did what he was supposed to do," and did not "lash out like he did before." Tr. 532. Treatment notes dated September 10, 2010, reveal that Plaintiff had missed all his therapy sessions for the past review cycle. Tr. 539-540.

On his fifth grade report card, Plaintiff received grades of "B," "C," and satisfactory. Tr. 393. An IEP report dated October 22, 2010, indicates that Plaintiff received sixty minutes of speech-language therapy per week and 600 minutes of special education instruction. Tr. 381-390. Plaintiff could comprehend reading on a 3.5 grade level and spell words on a 5.0 grade level with 80 percent accuracy. Tr. 382. He could perform grade level math that was reduced and given in a small group setting. Tr. 382.

9

On April 7, 2011, Plaintiff's mother reported that Plaintiff was doing better overall and had been more focused. Tr. 597. Dr. Witherington discontinued Strattera, continued Tenex, and added Vyvanse. Tr. 597. He estimated Plaintiff's GAF score at 47. Tr. 606.

A. Functional Equivalency

Plaintiff argues that his impairments functionally equal a listing. Specifically, Plaintiff argues that he has marked limitations in the domains of attending and completing tasks and interacting and relating with others. *See* Pl.'s Br. 7-9.

To determine whether an impairment functionally equals a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. 20 C.F.R. § 416.926a(b)(1). The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005). To functionally equal a listing, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A marked limitation is an impairment that seriously interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme." *Id.* An extreme limitation is defined as "more than marked," and exists when a child's impairment(s) interferes very seriously with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id.*

10

The ALJ concluded that Plaintiff's impairments do not functionally equal a listed impairment, as he found less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others, and no limitation in the domains of moving about and manipulating objects, caring for yourself, or health and physical well-being. Tr. 17-24.

      1. <u>Attending and Completing Tasks</u>

This domain considers how well a child is able to focus and maintain attention, and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities. 20 C.F.R. 416.926a(h). The ALJ found that Plaintiff has less than marked limitation in attending and completing tasks. Tr. 19-20. Specifically, he found that although Plaintiff has some difficulty in this domain, medication and therapy have been helpful in treating symptoms of inattention and distractability. Tr. 20.

Substantial evidence supports the ALJ's determination that Plaintiff has less than marked impairment in the domain of attending and completing tasks. Although Plaintiff had some initial difficulty in this domain, his ADHD symptoms significantly improved when he was compliant with medication and treatment. In April 2010, Plaintiff's mother reported that Plaintiff was doing "better" and his grades had improved while on Strattera. Tr. 536. On August 23, 2010, Plaintiff was doing better overall with his medication and "did what he was supposed to do." Tr. 532. On April 7, 2011, Plaintiff's mother reported that he had been more focused. Tr. 597. At the administrative hearing, Plaintiff's mother testified that Plaintiff was doing well and had not gotten into trouble recently at school. Tr. 73. Plaintiff was making "As," "Bs," and "Cs" on his report card and was "all right" while on medication, but hyperactive without it. Tr. 97-98. *See Estes v. Barnhart,* 275 F.3d 722,

11

725 (8th Cir. 2002) (an impairment that can be controlled by treatment or medication is not considered disabling).

Ms. Evans, Plaintiff's first grade teacher, noted that Plaintiff was a normal functioning child who held his own in reading, with a "B" average, and had good comprehension. Tr. 273. She added that he was responsible, polite, and obedient, and did not require behavior modification strategies. Tr. 269, 273. Jennifer Jernigan, Plaintiff's second grade teacher at Bonneville, completed a Teacher-Educator Domain Performance Assessment, in which she found Plaintiff had extreme limitations in the domain of maintaining attention and concentration for extended periods. Tr. 245. However, Plaintiff's mother testified that Plaintiff was at Bonneville for less than a month before being transferred to another school. Tr. 72-73. Thus, Ms. Jernigan was only able to observe Plaintiff for a very short period of time, whereas Ms. Evans taught Plaintiff for an entire year.

IEP notes from February 21, 2008, indicate that Plaintiff did not need behavioral interventions, accommodations, special communication, or assistive technology. Tr. 318. Plaintiff followed discipline and attendance policies, and a progress goal report found that Plaintiff's goals either had been met or would be met by the end of the year. Tr. 318-319. A third grade report card shows that Plaintiff received grades of "A," "B," "C," outstanding, and satisfactory. Tr. 330. Morever, Plaintiff had never been retained in school. Tr. 330, 338. For these reasons, substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitation in the domain of attending and completing tasks.

2. Interacting and Relating with Others

In assessing a claimant's limitations in the domain of interacting and relating with others, the ALJ considers how well the child initiates and sustains emotional connections with others, develops

12

and uses the language of the community, cooperates with others, complies with rules, responses to criticism, and respects and takes care of the possessions of others. 20 C.F.R. § 416.926a(i); *Garrett ex rel. Moore v. Barnhart*, 366 F.3d 643, 654 (8th Cir. 2004). With regard to this domain of functioning, the ALJ found that Plaintiff has less than marked limitation.

The records show that Plaintiff exhibited a moderate articulation disorder characterized by substitution and omission of sounds, for which he received sixty minutes of speech-language therapy weekly. Tr. 309. The Arkansas Severity Rating Assignment for Speech/Language Impairment rated Plaintiff's limitations as moderate for articulation, moderate for language, normal for fluency, and normal for voice. Tr. 310-311. On May 29, 2007, Ms. Layes found that Plaintiff's speech was 50 percent intelligible on the first attempt and 70-75 percent intelligible with repetition. Tr. 284.

Ms. Evans, Plaintiff's first grade teacher, found that Plaintiff was responsible, polite, and obedient, and did not require behavior modification strategies. Tr. 269, 273. An IEP assessment dated February 21, 2008, stated that Plaintiff's language skills were below grade level, his word reading, numerical operations, and speaking scores were at expectancy level, and his reading comprehension, mathematical reasoning, spelling, listening, and learning process scores were above expectancy level. Tr. 317. Plaintiff did not need behavioral interventions, accommodations, special communication, or assistive technology. Tr. 318. Plaintiff followed discipline and attendance policies, and a progress goal report found that Plaintiff's goals either had been met or would be met by the end of the year. Tr. 318-319.

On September 14, 2009, UAMS evaluators noted that Plaintiff did not meet the diagnostic criteria for a diagnosis of pervasive developmental disorder, but did demonstrate delays in socialization skills. Tr. 593. Plaintiff underwent a Speech and Language Reevaluation on

September 28, 2009. Tr. 346-354. Plaintiff's articulation scores were within the normal range, but his receptive language scores fell below the average range and his expressive language scores fell significantly below the average range. Tr. 354. However, Plaintiff's adaptive behavior skills were within the average range. Tr. 338.

Although the evidence of record demonstrates moderate impairment in Plaintiff's ability to effectively communicate with others, the undersigned cannot conclude that Plaintiff's impairment seriously interferes with the his ability to independently initiate, sustain, or complete activities. For these reasons, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff has less than marked limitation in the domain of interacting and relating with others.

B.  Opinion Evidence

Plaintiff argues that the ALJ failed to attach proper weight to Dr. Witherington's opinion. *See* Pl.'s Br. 9-13. A treating physician's opinion is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in a clamant's record. *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009); 20 C.F.R. § 404.1527(d)(2). The record must be evaluated as a whole to determine whether the treating physician's opinion should be controlling. *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005). A treating physician's evaluation may be disregarded where other medical assessments "are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (quoting *Prosch*, 201 F.3d at 1013). In any case, an ALJ must always "give good reasons" for the weight afforded to the treating physician's opinion. 20 C.F.R. § 404.1527(d)(2).

14

The ALJ attached little weight to the report completed by Dr. Witherington, noting that his findings were inconsistent with his own progress notes and were based to some extent on the subjective representations of Plaintiff's mother. Tr. 17.

After reviewing the evidence of record, the undersigned concludes that substantial evidence supports the ALJ's evaluation of the opinion evidence. Dr. Witherington's overly restrictive findings conflict with his own treatment notes, which reveal that Plaintiff's symptoms improved with medication and treatment. Tr. 455, 458, 491, 532, 636, 597. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ may credit other medical evaluations over treating physician when other assessments are supported by better medical evidence or where treating physician renders inconsistent opinions); *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (treating physician's opinion was not supported by his own findings or the diagnostic data).

Additionally, Plaintiff argues that his GAF scores alone warrant a finding of disability. GAF scores cover only a snapshot in time and are very subjective in nature. *See Jones v. Astrue*, 619 F.3d 963, 973 (8th Cir. 2010). While the GAF system provides insight into a claimant's overall level of functioning, it is by no means dispositive on the issue of disability and must be considered in conjunction with other medical evidence. Here, the ALJ considered the medical evidence of record, including Plaintiff's GAF scores, but determined he was not disabled. Substantial evidence supports this determination.

Finally, the undersigned notes that the ALJ properly considered Plaintiff's teacher's evaluations in conjunction with the regulations regarding "other source" opinions. 20 C.F.R. § 416.913(d)(1). Thus, after considering the evidence of record, the Court concludes that substantial evidence supports the ALJ's determination.

## V. Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's Complaint is dismissed with prejudice.

IT IS SO ORDERED this 23rd day of January 2013.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE